## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| **LEONARD KIDD,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **No. 11 C 6839** |
| | ) | |
| **MARCUS HARDY,** | ) | |
| | ) | |
| **Respondent.** | ) | |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Petitioner Leonard Kidd's (Kidd) petition

for writ of habeas corpus (Petition) brought pursuant to 28 U.S.C. § 2254.  For the

reasons stated below, the court denies the Petition.

## BACKGROUND

Kidd contends that he is currently serving a life sentence for murder, a thirty

year sentence for aggravated arson, and is also serving an additional sentence for an

unrelated matter.  Kidd was convicted in 1987 in Illinois state court of one count of

arson and ten counts of murder, relating to the deaths of ten children, who died as a

result of a fire set to a residential building.  (R Ex. A 1).  Kidd was sentenced to

death for the murders and he appealed directly to the Illinois Supreme Court, which

ultimately remanded the case for a re-trial.  (R Ex. A 1).  Kidd was retried before a

jury and Kidd chose to represent himself at his second trial, with counsel from his

first trial serving as standby counsel.  Kidd was again convicted and again sentenced

to death.  Kidd appealed directly to the Illinois Supreme Court, which affirmed the

trial court.  In May 1996, while Kidd's direct appeal was pending, Kidd filed a *pro se*

post-conviction petition.  Kidd was then appointed counsel, who filed amended post-

conviction petitions and a supplemental brief.  The state trial court granted the

State's motion to dismiss the post-conviction petitions.  In January 2003, Kidd's

capital sentence was commuted to life imprisonment and his appeal was transferred

to the Illinois State intermediate appellate courts.  In May 2010, the Illinois Appellate

Court affirmed the trial court's ruling on the post-conviction petitions.  Kidd then

filed a petition for leave to appeal (PLA) with the Illinois Supreme Court, which was

denied on September 29, 2010.  On September 28, 2011, Kidd filed the Petition in

this action.


## LEGAL STANDARD

An individual in custody pursuant to state court judgment may seek a writ of

habeas corpus pursuant to 28 U.S.C. § 2254, which provides the following:

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to
> any claim that was adjudicated on the merits in State court proceedings unless
> the adjudication of the claim--(1) resulted in a decision that was contrary to, or
> involved an unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States; or (2) resulted in a
> decision that was based on an unreasonable determination of the facts in light
> of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The decision made by a state court is deemed to be contrary to

clearly established federal law "'if the state court applies a rule different from the

governing law set forth in [Supreme Court] cases, or if it decides a case differently

than [the Supreme Court has] done on a set of materially indistinguishable facts.'"

*Emerson v. Shaw*, 575 F.3d 680, 684 (7th Cir. 2009)(quoting *Bell v. Cone*, 535 U.S.

685, 694 (2002)). The decision by a state court is deemed to involve an unreasonable

application of clearly established federal law "'if the state court correctly identifies

the governing legal principle from [Supreme Court] decisions but unreasonably

applies it to the facts of the particular case.'" *Emerson*, 575 F.3d at 684 (quoting

*Bell*, 535 U.S. at 694).


**DISCUSSION**

Kidd asserts the following claims in the Petition: (1) that Kidd was denied due

3

process and effective assistance of counsel because the trial court failed to hold a

formal fitness hearing to determine whether Kidd was fit to waive counsel and

proceed *pro se* (Claim 1), (2) that Kidd's waiver of his right to counsel was not

knowing and voluntary (Claim 2), and (3) that Kidd was denied due process and

effective assistance of counsel, since, according to Kidd, his former counsel provided

the State with false information that led to an illegal interrogation and unreliable

confession (Claim 3).

I.  Formal Fitness Hearing (Claim 1)

  Respondent argues that Claim 1 is procedurally defaulted, and that even if the

claim was not procedurally defaulted, Kidd has not shown that the claim has any

merit.

  A.  Procedural Default

  Respondent contends that Claim 1 is procedurally defaulted since the Illinois

Appellate Court ruled based upon an independent and adequate state law ground.  If

a state court "denies a prisoner relief on a question of federal law and bases its

decision on a state procedural ground that is independent of the federal question, the

federal question is procedurally defaulted."  *Lee v. Davis*, 328 F.3d 896, 899-900

(7th Cir. 2003); *see also Promotor v. Pollard*, 628 F.3d 878, 885 (7th Cir. 2010) (stating that "[g]enerally, a federal court may not grant habeas relief if the state court's decision was based on an adequate and independent state law ground"). The adequacy of a decision based on a state ground "is a question of federal law, and the ground is considered adequate only if the state court applies the rule in a consistent and principled way." *Promotor*, 628 F.3d at 885. A petitioner can still bring a defaulted claim "if the petitioner can establish cause and prejudice for the default, or establish that the failure to consider the defaulted claim will result in a fundamental miscarriage of justice." *Id.*

The record reflects that on his direct appeal Kidd did not raise Claim 1. (R Ex. A 21-23). The Illinois Appellate Court, in affirming the dismissal of the post-conviction petitions, agreed that Kidd had not established an exception to the procedural default under State law. (R Ex. A 23-25); *see also Easley*, 736 N.E.2d at 985 (indicating that a defendant has not waived a claim if on post-conviction proceedings the defendant "presents evidence that did not appear on the face of the record and was not available to defense counsel on direct appeal"). Thus, Claim 1 is procedurally defaulted. Nor has Kidd shown that any exception to procedural default is applicable in this instance. *See, e.g., Coleman v. Hardy*, 628 F.3d 314, 318 (7th Cir. 2010); *Kaczmarek v. Rednour*, 627 F.3d 586, 591 (7th Cir. 2010).

B.  Merits of Claim 1

Respondent also argues that Claim 1 lacks merit.  Kidd argues that he was denied due process and effective assistance of counsel because the trial court failed to hold a formal fitness hearing to determine whether Kidd was competent to waive counsel and proceed *pro se*.  Under Illinois law, pursuant to 725 ILCS 5/104-11, "[w]hen a bona fide doubt of the defendant's fitness has been raised, the burden of proving that the defendant is fit by a preponderance of the evidence and the burden of going forward with the evidence are on the State . . . ."  *Id.*; *see also People v. Coleman*, 660 N.E.2d 919, 928 (Ill. 1995)(stating that "[c]ompetence to waive counsel is measured by the same standard as competence to stand trial"); *People v. Easley*, 736 N.E.2d 975, 985 (Ill. 2000)(stating that "[i]n Illinois, a defendant is presumed to be fit to stand trial, and will be considered unfit only if, because of the defendant's mental or physical condition, the defendant is unable to understand the nature and purpose of the proceedings against him or her, or to assist in his or her defense").  The record does not reflect a basis for the trial court to have found a bona fide doubt as to Kidd's fitness to proceed *pro se*.  Nor does the record indicate that the trial court made any ruling that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or resulted in a decision that was based on an unreasonable

6

determination of the facts in light of the evidence presented in the State court proceeding. In order for a criminal defendant to waive the right to counsel, "he must be competent to waive the right and do so knowingly and voluntarily." *Simpson v. Battaglia*, 458 F.3d 585, 593 (7th Cir. 2006)(citing *Godinez v. Moran*, 509 U.S. 389, 400-01 (1993)); *see also Faretta v. California*, 422 U.S. 806, 835 (1975)(stating that a waiver must be done knowingly and intelligently and "[a]lthough a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open"). In determining whether an individual is competent to waive the right to counsel, the court must evaluate "the defendant's mental capacity," and ascertain "whether he has the *ability* to understand the proceedings." *Id.* (emphasis in original). The court in conducting the "knowing and voluntary inquiry," must "determine whether the defendant actually *does* understand the significance and consequences of a particular decision and whether the decision is uncoerced." *Id.* (emphasis in original).

Kidd asserted in his post-conviction petition appeal that he was taking the drug Sinequan at the time of trial, which he contends impaired his ability to function mentally by making him sleepy and drowsy. (R Ex. A 22). The Illinois Appellate

Court pointed out that there was no evidence in the record of erratic behavior by

Kidd and that the trial court had ample opportunity over the two years of the case to

observe Kidd, including at the trial. (R Ex. A 22-24). The Illinois Appellate Court

also correctly concluded that although Kidd had obtained opinions from certain

doctors regarding his competency, the opinions were not sufficient to show that Kidd

was not competent at the time of his waiver and during the time he represented

himself at trial. (R Ex. A 24). In the Petition, Kidd also presents evidence that he

contends shows that he has mental problems such as epilepsy, that he takes certain

medications, and that he has a low IQ. However, Kidd raised the evidence relating to

his alleged mental problems, low IQ, and medications with the Illinois Supreme

Court on his second appeal, and the Illinois Supreme Court properly concluded that

Kidd had not put forth sufficient evidence to show that the trial court was required to

conduct a formal competency hearing. *People v. Kidd*, 687 N.E.2d 945, 951 (Ill.

1997). The Illinois Supreme Court also correctly concluded that there was not

sufficient evidence to show that Kidd was actually taking psychotropic drugs that

impacted his ability to understand the proceedings. *Id.* Kidd asserts in his Petition

that at the time of his second trial he was taking the drug Sinequan. (Pet. 20).

However, as the Illinois Supreme Court correctly pointed out, Kidd had gave

contrary testimony in the state court proceedings. Kidd testified orally at a hearing

8

on his post-trial motions and stated under oath that during trial he was using marijuana and cocaine instead of his prescribed Sinequan. *Kidd*, 687 N.E.2d at 950. The trial court that heard Kidd's post-trial motions concluded that Kidd's claims concerning the impairment of his judgment due to the use of drugs lacked credibility and was merely a "ploy" to undo his conviction. *Id.* The Illinois Supreme Court also correctly pointed to evidence by a state expert in the field of forensic psychiatry who had examined Kidd and had concluded that Kidd was faking his responses on his mental evaluations in order to make his mental abilities appear more impaired than they really were. *Id.* at 954.

The United States Supreme Court made clear that "[a] court is [not] required to make a competency determination in every case" a defendant seeks to waive counsel, and that "[a]s in any criminal case, a competency determination is necessary only when a court has reason to doubt the defendant's competence." *Godinez*, 509 U.S. at 402 n.13. The record reflects that the trial court conducted an adequate inquiry of Kidd prior to concluding that he was competent to proceed *pro se*. (R Ex. K 96-100). The record also reflects that Kidd was advised of the challenges he would face if he chose to represent himself and the record does not reflect that Kidd's responses indicated a lack of understanding regarding such challenges. The trial court, which was able to observe Kidd when he was given the admonitions, did

not indicate any concern in the record suggesting that Kidd was unable to comprehend the choice he was making or the potential consequences of proceeding *pro se*. The record further indicates that throughout the trial, Kidd was able to adequately represent himself.

Based on the above, there is no indication in the trial record that Kidd was not competent to proceed *pro se*. The many post-hoc justifications presented by Kidd to support his contention that he was not competent to proceed *pro se* are not adequate to show that Kidd should prevail on Claim 1. The record also reflects that Kidd was not without recourse if he needed assistance, since the trial court ordered Kidd's counsel from his first trial to serve as standby counsel to assist Kidd if he needed help. (R Ex. A 1); (R Ex. K 99). Thus, based on the above, Claim 1 was procedurally defaulted based on an independent state ground, and even if it were not, the claim lacks any merit.

## II.  Knowing and Voluntary Waiver (Claim 2)

Kidd argues that his waiver of his right to counsel was not knowing and voluntary. Under the Sixth Amendment there is "an implied right to waive counsel and represent oneself." *Smith v. Grams*, 565 F.3d 1037, 1044 (7th Cir. 2009). A criminal defendant may waive his right to counsel as long as the waiver is made

"knowing[ly] and vountar[ily]." *United States v. Johnson*, 534 F.3d 690, 694 (7th

Cir. 2008); *see also Smith*, 565 F.3d at 1044 (listing factors to consider for

determining whether the waiver is being done knowingly and intelligently).

Respondent has provided transcripts from the hearings in the trial court which

clearly indicate that Kidd was cognizant of what he was doing when he knowingly

and voluntarily waived his right to counsel.  In addition, the record reflects that the

trial court had ample opportunity to observe Kidd during the course of the

proceedings and that there was no indication of erratic behavior on the part of Kidd.

Kidd argues that he "did not understand the nuances of cross examination," and "had

no idea what to do when faced with a hostile witness."  (Pet. 39-40).  However, to

waive his right to counsel, the trial court did not have to find that Kidd would have

been able to proceed in his case as effectively as a trained attorney.   The record

reflects that the trial court in fact informed Kidd of the difficulties he would face

without legal training and urged Kidd to choose to be represented by counsel.  (R K.

87); *see also Kidd*, 687 N.E.2d at 951 (stating that "although a court may deem a

defendant's decision to represent himself unwise, if he makes his decision freely,

knowingly, and intelligently, the court must accept it out of that respect for the

individual which is the lifeblood of the law").  The fact that Kidd may not have been

as skilled as attorney in cross-examination or in other trial activities does not indicate

11

that Kidd failed to knowingly and voluntarily waive his right to counsel.

The record also reflects that the trial court stated: "I really urge you not to try and undertake to defend yourself, but to stay with your lawyer." (R Ex. K 87). The record also indicates that the court told Kidd that he "would be absolutely and totally foolish to undertake th[e] trial without a good lawyer, an experienced lawyer. . . who ha[d] already f[ought] one trial for [Kidd] and kn[ew] the case and h[ad] always been extremely vigorous and energetic and conscientious in trying to defend" Kidd. (R Ex. K 86-87). The record also reflects that the trial court did not immediately accept the waiver of right to counsel and told Kidd to "[t]hink about it again and see if [he] still h[ad] the same thought" when the trial began. (R Ex. K 87). Kidd was given an opportunity at the beginning of trial to proceed with counsel and Kidd reaffirmed his desire to proceed *pro se*. Kidd has not pointed to sufficient evidence in his Petition to show that he failed to knowingly and voluntarily waive his right to counsel. Nor has Kidd shown that the decision by the trial court that Kidd had knowingly and voluntarily waived his right to counsel was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Therefore, based on the above, Kidd has not shown that he should

12

prevail on Claim 2.

### III.  Providing of Evidence to State (Claim 3)

Kidd argues that he was denied due process and effective assistance of counsel, since, according to Kidd, his former counsel provided the State with false information that led to Kidd's illegal interrogation and unreliable confession (Claim 3).  The record reflects that in an unrelated case, Kidd and Leroy Orange (Orange) were charged with murder, armed robbery, aggravated arson, and concealment of deaths for a crime involving the deaths of victims who had been bound, gagged, and stabbed before a fire was set at the location.  Kidd contends that Earl Washington (Washington) initially represented Kidd and Orange in those unrelated proceedings, but ultimately withdrew as Kidd's counsel based on a conflict of interest.  Kidd claims that Washington subsequently falsely told authorities that Orange had informed Washington that Kidd had set the fire in question in this case and that Washington falsely claimed that Orange told him to inform the State's Attorney's Office of that fact.  Kidd contends that after receiving the information from Washington, the police and the State's Attorney's Office hid Kidd from his newly appointed counsel and conducted an unlawful interrogation of Kidd.

To show ineffective assistance of counsel, a petitioner must establish that: "(1)

13

his attorney's performance fell below an objective standard of reasonableness, and (2) he suffered prejudice as a result." *Wyatt v. United States*, 574 F.3d 455, 457-58 (7th Cir. 2009)(citing *Strickland*, 466 U.S. at 687-88 (stating that a "movant must overcome the 'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance'" and "[h]e must establish the specific acts or omissions of counsel that he believes constituted ineffective assistance; we then determine whether such acts or omissions fall outside the wide range of professionally competent assistance")(quoting in part *Strickland*, 466 U.S. at 689); *see also Winston v. Boatwright*, 649 F.3d 618, 633 (7th Cir. 2011)(explaining that there can be a presumed prejudice when there is an actual conflict of interest)(citing *Cuyler v. Sullivan,* 446 U.S. 335 (1980)).

Kidd has failed to point to evidence showing that he received ineffective assistance of counsel by Washington or any subsequent counsel. Washington properly withdrew from representing Kidd based upon a conflict of interest. As the Illinois Supreme Court correctly noted, the record reflects that Orange advised Washington regarding Kidd's involvement in the fire at issue in this case after Washington had withdrawn as counsel for Kidd, and there was no evidence of an actual or apparent conflict of interest by Washington at that point since he withdrew earlier. *Kidd*, 687 N.E.2d at 965. Finally, Kidd has not established a prejudice

14

resulting from any ineffective assistance of counsel.  The Illinois Supreme court correctly pointed out that "[u]pon retrial the State marshaled an extensive array of evidence of [Kidd's] guilt."  *Kidd*, 687 N.E.2d at 957-61.  Therefore, based on the above, Kidd has not shown that he should prevail on Claim 3.  Based on the above, the Petition is denied in its entirety.

## CONCLUSION

Based on the foregoing analysis, the Petition is denied in its entirety.

_____
Samuel Der-Yeghiayan
United States District Court Judge

Dated:  June 20, 2012

15